UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MMR INTERNATIONAL LIMITED, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-1188 |
| | § | |
| WALLER MARINE, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Waller Marine, Inc.'s motions for partial summary judgment as to plaintiff's claims for breach of contract in excess of not-to-exceed price and tortious interference. After considering the motions, responses thereto, replies, and the applicable law, the court finds that the motion related to the breach of contract claim (Dkt. 36) should be DENIED and the motion related to the tortious interference claims (Dkt. 37) should be GRANTED.

**I. BACKGROUND**

In September 2010, Waller and MMR executed a purchase order requiring MMR to mobilize and manage the equipment and the local Venezuelan labor force necessary to complete electrical and instrumentation work on two power barges Waller was constructing in Venezuela for Citgo. Dkt. 46, Ex. 1. The purchase order reflected a "not to exceed" price of $443,468.80. *Id.*

While MMR accepted the "not-to-exceed" price in the purchase order, MMR contends the scope of the project drastically changed after its inception, requiring MMR to increase its projected cost to complete the job. Dkt. 46, Ex. 2, pp. 31-32. On October 15, 2010, MMR notified Waller via email that it was projected to significantly exceed the "not-to-exceed" price due to the additional labor and work required by Waller. Dkt. 46, Ex. 11. The email included a pro forma invoice and

spreadsheet itemizing the labor and supplies expected for the job by MMR for the month of October. *Id.*

MMR alleges that this request was accepted by Waller. Specifically, Mike Hammonds, Waller's contract administrator, orally responded to MMR's request by allegedly informing John Courville, MMR's Vice President, that the requested amendment was "no problem." Dkt. 36, Ex. 1. Hammonds allegedly stated he preferred to issue only one amended purchase order, so he would wait to issue such purchase order when the final invoice amount was known. *Id.* On this basis, MMR claims the contractual "not-to-exceed" price was orally modified. MMR ultimately invoiced Waller for approximately $954,837.62 for work it performed through November 14, 2010. Dkt. 2, Exs. 2 & 3. Waller has not paid the invoices. Dkt. 1, pp. 3-4.

Further, soon after work began in Venezuela, disputes arose between the parties. Waller claims MMR's workforce continually presented problems on the job site in terms of strikes, thefts, threats of bodily harm and poor work ethic. Dkt. 52, Ex. 2, pp. 51-52. For these reasons, Waller alleges it terminated the contract on November 8, 2010, before MMR completed the full scope of work on the barges. Dkt. 50, Ex. 10. MMR, however, claims that Waller unjustifiably terminated MMR for improper reasons. Dkt. 50, Ex. 7, pp. 234-38. Specifically, MMR claims that Waller, Alba Energia (Waller's Venezuelan partner), and Edibarca (a local labor service subcontractor) colluded to terminate MMR, so that Edibarca could hire MMR's labor force and charge Waller less for the same labor. *Id.*

MMR sued Waller for breach of contract for failing to pay the outstanding invoices and for tortious interference of the existing contract and prospective business relations. Waller counterclaimed for breach of contract and negligent hiring, supervision, training and retention of its

2

labor force. Before the court are Waller's motions for partial summary judgment on MMR's claims for breach of contract and tortious interference. The court will address each in turn.

## II. STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66

F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

#### A.  *Original Purchase Order & Modification*

Waller maintains that MMR cannot raise an issue of fact with regard to Waller's obligation to pay an amount above the $443,468.80 "not-to-exceed" price. Waller, thus, asks this court to rule as a matter of law that the "not-to-exceed" price caps the damages recoverable by MMR. MMR

4

contends that Waller supplied the price term without providing a proper work of scope and agreed to modify the price term when Waller was notified of the expected overage.

The court does not dispute the clarity of the not-to-exceed price term, but finds a fact issue exists with respect to whether the price term was ultimately orally modified. In construing a contract, the principal objective is to ascertain the true intentions of the parties as expressed in their agreement. *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 80 (Tex. App.–Tyler 1996, writ dism'd by agr.).[1] Whether a contract is ambiguous is a question of law for the court to decide. *Id.* A contract is not ambiguous if it is worded so that the court may give it a certain or definite legal interpretation. *Id.* An agreement to render a performance at a price that shall not exceed a specified amount is valid as an agreement to render the performance at the stated maximum. *Norton v. Menard Lumber Co.*, 523 S.W.2d 791, 793 (Tex. Civ. App.–San Antonio 1975, no writ). Generally, plaintiff should not be able to recover any amount in excess of the agreed to maximum price. *Id.*

The purchase order executed between the parties clearly states that the "Total Purchase Order: Not to Exceed" price is $443,468.80. Dkt. 46, Ex. 1; *see also* Dkt. 36, Ex. 1, p. 26 (MMR's Vice President testified "not to exceed" means "not to go over a certain amount."). The purchase order is executed on behalf of both parties, evidencing MMR's agreement to this term. Dkt. 46, Ex. 1. As to the price term agreed to by Waller and MMR, the court finds no factual dispute that as of September 23, 2010, MMR was to "assist in the Electrical Completion of the WMI Power Barges in Venezuela" and "mobilize a crew as directed by WMI to the Venezuelan site" for $443,468.80. *Id.*

However, parties are free to modify a contract by any manner in which they can make a contract. *Hondo Oil & Gas Co. v. Texas Crude Operator, Inc.*, 970 F.2d 1433, 1437 (5th Cir. 1992)

---

1 There is no dispute that Texas law applies to this case.

(applying Texas law). Whether the parties modified the contract depends on the parties' intentions and is a question of fact. *Id.* (citing *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228-29 (Tex. 1986)). A contract modification must satisfy the traditional requirements of a contract, namely there must be a meeting of the minds supported by consideration. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.–Dallas 2008, no pet.). In determining whether the parties had a meeting of the minds concerning a modification of a contract, the focus is on what the parties did and said, not their subjective states of mind. *Id.*

While Waller claims it never agreed verbally or in writing to an increase to the purchase order price, MMR raises a fact question regarding whether the contract was orally modified following its request to increase the amount of the purchase order. Specifically, MMR's Vice President, John Courville, requested of Waller's contract administrator, Mike Hammonds, to increase the amount of the original purchase order. Dkt. 36, Ex. 3. Courville provided an itemized pro forma invoice estimating the cost of the project based on Waller's increased labor and equipment needs. Dkt. 46, Ex. 11. In response to MMR's request, Hammonds allegedly stated that it was not a problem, and told MMR not to worry about it. Dkt. 36, Ex. 1, pp. 48-49. Hammonds told Courville that he preferred to issue only one amendment when the final invoice price was known so as not to issue multiple purchase orders. *Id.* Viewing this evidence in a light most favorable to MMR, the court concludes a fact issue exists as to whether Waller orally agreed to modify the price term of the contract based on MMR's projected overages. *See e.g., Pierce Oil Corp. v. Gilmer Oil Co.*, 230 S.W. 1116, 1117-18 (Tex. Civ. App.–Amarillo 1921, writ dism'd) (finding the existence of the contract was not dependent on the formal execution of a written agreement when the defendant showed assent to the terms by stating they were "all right").

Waller further contends that any alleged modification is unenforceable because no new or additional consideration supported the modification. Generally, when a party agrees to do no more

than that which he is already bound to do under an existing contract, the consideration is not sufficient to support a modification. *Dieterich*, 270 S.W.3d at 702. However, exceptions exist to this preexisting duty rule. Specifically, "a promise modifying a duty under a contract not fully performed on either side is binding if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made." RESTATEMENT (SECOND) OF CONTRACTS § 89 (1981). While no Texas courts have expressly adopted this section of the Restatement, Texas courts have relied on these same principles regarding the adequacy of consideration for modifications of an ongoing contract.[2] *See McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 94-95 (5th Cir. 1995) (collecting Texas cases wherein the same concepts enunciated in Section 89 of Restatement of Contracts were applied); *see also City of Galveston v. Galveston City R.R Co.*, 46 Tex. 435, *3 (1877) (finding if a contract's enforcement becomes oppressive because of changed circumstances, an agreement to pay additional compensation is not invalid for want of consideration.); *George W. Baker & Sons v. Lovorn*, 262 S.W. 508, 509 (Tex. Civ. App.–Fort Worth 1924, writ ref'd) (noting if both parties with knowledge of the changed conditions assent to the modification of the original agreement, then there is sufficient consideration to support the modified contract).

MMR is required to show "an objectively demonstrable reason for seeking modification." RESTATEMENT (SECOND) OF CONTRACTS § 89 cmt. b. MMR maintains that it was not given any detailed plans or defined scope of work for the completion of the barges prior to executing the

---

2 When faced with an unsettled point of state law, federal courts, sitting in diversity, must make an *Erie*-guess as to how Texas courts might decide a particular question of law. *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 379 (5th Cir. 1997). Based on Texas courts' use of the principles recited in Section 89 of the Restatement of Contracts and Texas courts' frequent adoption of Restatement of Contract provisions, the court predicts that Texas would adopt this provision of the Restatement under these circumstances. *See, e.g., Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 707 (Tex. 1996); *Beck v. Beck*, 814 S.W.2d 745, 749 n.6 (Tex. 1991); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 752 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

purchase order. Dkt. 46, Ex. B, pp. 28-29. Further, MMR was not involved in the negotiation of the total purchase order price, but rather provided Waller its time and materials rates and relied on Waller to quote a fair price for the work Waller anticipated it would need for the completion of the project. *Id.* After the project began, the number of workers required and type of work quickly ramped up. Dkt. 36, Ex. 1, p. 32. Upon realizing that the scope of the project was far more than Waller estimated, MMR requested an increase in the purchase price. Dkt. 46, Ex. 11. Waller's asset to this request remains a question of fact. MMR has demonstrated that the it was provided very limited information at the time of the execution of the purchase order and the scope and extent of work quickly changed after the project commenced. Under these circumstances, the court cannot find that the purported modification is unenforceable because it is not supported by consideration.

### B. *Tortious Interference*

Waller also seeks summary judgment on tortious interference with existing contract and tortious interference with prospective relations claims asserted by MMR. Waller contends MMR has no evidence supporting the elements of these claims.

#### i. *Tortious Interference with Existing Contract*

The elements of a cause of action for tortious interference with an existing contract are (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage, and (4) actual damage or loss occurred. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993). A defendant must be a stranger to the contract in order to tortiously interfere with it. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). Waller is a party to the only contract at issue in this case, and thus, is not capable of tortiously interfering with it.

MMR describes an unsubstantiated conspiracy to support its claim for tortious interference. Under Texas law, there is no independent liability for an alleged civil conspiracy. *Miller v. Raytheon*

*Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.–Houston [1st Dist.] 2007, no pet.). A plaintiff must prove another substantive tort upon which to base a civil conspiracy claim. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Because MMR's tortious interference claim fails, its conspiracy claim likewise fails.

Further, to the extent that MMR attempts to argue that the object of the conspiracy was to breach the contract between MMR and Waller, this argument is also unavailing. A party to a contract may not sue another party to the contract for conspiracy to breach the contract. *San Saba Energy, L.P. v. McCord*, 167 S.W.3d 67, 73 (Tex. App.–Waco 2005, pet. denied). Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Waller had the right to terminate this contract. Therefore, MMR's assertion that Waller was involved in a conspiracy that led to the termination of its contract with MMR fails as a matter of law.

### ii. *Tortious Interference with Prospective Business Relations*

The elements of tortious interference with prospective business relations are: (1) there was a reasonable probability of entering into a business relationship, (2) the defendant acted maliciously by intentionally preventing the relationship from occurring, with the purpose of harming the plaintiff, (3) the defendant was not privileged or justified, and (4) actual harm or damages resulted. *Tarleton State Univ. v. Rosiere*, 867 S.W.2d 948, 952 (Tex. App.–Eastland 1994, writ dism'd by agr.). MMR has offered no evidence of any prospective business opportunities lost because of Waller's conduct. Further, as discussed by the court in relation to MMR's claim for tortious interference with an existing contract, liability for tortious interference can only be had against third parties, or strangers to the contract. *Id.* Thus, Waller is not a proper party to MMR's claim.

9

## IV. Conclusion

The court finds that fact issues exist as to plaintiff's claim for breach of contract in excess of the not-to-exceed price, but not as to its tortious interference claims. Therefore, Defendant's motion for partial summary judgment on the not-to-exceed contract price (Dkt. 36) is DENIED and Defendant's motion for partial summary judgment on the tortious interference claims (Dkt. 37) is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on July 24, 2013.

_____
Gray H. Miller
United States District Judge